IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:24-cv-01645-CEM-DCI

TIMOTHY ALLEN CHEY and DR. SUSAN DIZON-CHEY,

    Plaintiffs,

v.

DELTA AIR LINES, INC., FERGIE FEREGUSON, LAVELLE LOURY, JANE DOE (fictitious name),

    Defendants.
_____/

## **DELTA'S MOTION TO DISMISS**

Defendant, DELTA AIR LINES, INC., ("Delta") by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 8, 10(b), and 12(b)(6), hereby files this Motion to Dismiss Plaintiffs' Complaint [ECF No. 1], as the claims are expressly preempted by the Airline Deregulation Action, found at 49 U.S.C. § 41713(b)(1) (2012) (hereinafter "ADA"), fail to state a claim upon which relief can be granted, and/or are an impermissible shotgun pleading.

## **INTRODUCTION**

This case arises from Plaintiffs' alleged improper removal from a Delta Air Lines, Inc. flight on March 31, 2024, at LaGuardia Airport ("LGA") in New York City, New York. *See ECF No. 1 generally*. Among other allegations, Plaintiffs have

alleged nine (9) causes of action against Defendants, including violations of Section 1981 and the New York Law Against Discrimination, negligent and intentional infliction of emotional distress, breach of contract, gross negligence, negligent hiring, supervision, training, and/or retention, civil conspiracy, and false imprisonment. *Id.*

First, with the exception of Plaintiffs' Section 1981 claim, all of Plaintiffs' claims are preempted by the ADA. The ADA and subsequent Supreme Court precedent is clear - state law claims against airlines that relate to the "services" provided by the airline are preempted. All of Plaintiffs' causes of action stem from their removal from Delta's aircraft on March 31, 2024, after they got into a dispute with another passenger. Delta's decision to remove the Plaintiffs relates directly to the "services" that Delta provides, namely the method and manner in which Delta maintains passenger and flight safety on its aircraft.

Secondly, Plaintiffs fail to state a claim upon which relief can be granted in several of their causes of action based on New York law.

Finally, Plaintiffs' Complaint is the poster child for an impermissible shotgun pleading, as Plaintiffs fail to distinguish between the various defendants named in their Complaint. Further, Plaintiffs incorporated and adopted all preceding *and* succeeding allegations into each and every account. Both "cardinal sins" render Plaintiffs' claims subject to dismissal as an impermissible shotgun pleading.

## **LEGAL STANDARD**

**a. Rule 8 and 10(b)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must also be "simple, concise, and direct," and must state its claims in number paragraphs, each limited as far as practicable to a single set of circumstances. Fed. R. Civ. P. 8(d)(1) and 10(b). Further, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

The rules require the plaintiff to present its claims discreetly and succinctly, so that its adversary can discern what it is claiming and to permit the court to determine which facts support each claim and whether a plaintiff has stated a claim upon which relief may be granted. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

"Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. They are unacceptable . . . . [C]ourts [have] recognized that allowing shotgun pleadings would lead to many negative consequences." *See McKenna v. HP Inc.*, No. CV-21-08271-PCT-JAT, 2021 WL 5988598, at *2 (D. Ariz. Dec. 17, 2021) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001)). Shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). Shotgun pleadings conflict with both Rule 8(a) and Rule 10(b). *See LaCroix v. Western Dist. Of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015). Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 8:11–cv–474–T–30AEP, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)). It follows that a shotgun pleading includes one where the plaintiff asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland*, 792 F.3d at 1323. These types of pleadings violate Rule 8 of the Federal Rules of Civil Procedure and require dismissal. *Id.*

### b. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal when plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When a court evaluates a motion to dismiss pursuant to Rule 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff, with factual allegations taken as true. *See, e.g., Yuken Corp. v. Gedcore LLC*, No. 22-20661-CIV-ALTONAGA/Torres, 2022 WL 3701233, at *2 (S.D. Fla. June 21, 2022) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A complaint must contain sufficient factual allegations to provide notice of the claims asserted and the ground upon which the claims rest.

*Bell Atlanta Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Therefore, a complaint should be dismissed if it fails to contain sufficient factual allegations, which if accepted to be true, would state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a complaint fails to plead sufficient facts to allow the court to draw inferences more than the mere possibility of misconduct, the complaint has failed to show that the plaintiff is entitled to relief and must then be dismiss. *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

### I. Counts II-IX of Plaintiffs' Complaint Are Preempted by the ADA

The ADA was enacted in 1978 to encourage competition among airlines through deregulation. To prevent airlines from needing to comply with inconsistent state laws regulating their services, the ADA contains an express preemption provision. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992) ("[t]o ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a preemption provision"). The provision states: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (2012). Accordingly, laws that "relate to" an airline's "price, route, or service" are expressly preempted under the ADA.

The Supreme Court has defined "related to" under the ADA broadly, using the same standard for interpretation as ERISA. *Morales*, 504 U.S. at 383–84, 112 S.Ct. at 2037 ("Since the relevant language of the ADA is identical [to ERISA], we think it appropriate to adopt the same standard here...."). The Eleventh Circuit adopted the Fifth Circuit's broad interpretation of "service" under the ADA in *Branche v. Airtran Airways, Inc.*:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another.... Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the **transportation itself**. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

342 F.3d 1248, 1256–57 (11th Cir.2003) (emphasis added) (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc)).

### a. Plaintiffs' Common Law Tort Claims Are Preempted by the ADA

Plaintiffs assert several common law tort causes of action in their Complaint. In particular, Plaintiffs allege that Delta (1) negligently inflicted emotional distress on them; (2) intentionally inflicted emotional distress on them; (3) committed gross negligence; (4) negligently hired, supervised, trained, and/or retained the Delta pilots and other personnel responsible for the operation of Flight 1249; (5) civilly conspired to commit torts upon Plaintiffs; and (6) falsely imprisoned Plaintiffs. *See* generally [ECF No. 1]. In *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281

(2014), the Supreme Court held that "state common-law rules fall comfortably within the language of the ADA pre-emption provision." The Supreme Court highlighted that "what is important, therefore, is the effect of a state law, regulation, or provision, not its form, and the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can by state statute or regulation." *Id.* at 283. Thus, the standard for determining whether a common law claim is preempted by the ADA is whether the claim "has a connection with, or reference to, airline prices, routes, or services." *Id.* at 284.

Here, all of Plaintiffs' claims stem from their removal from Delta flight 1249. For example, their negligent and intentional infliction of emotional distress claim is predicated on the "kicking [out of] two 50-something year olds off a flight in front of hundreds of passengers." [ECF No. 1 at ¶ 96]. Further, Plaintiffs claim that Delta breached its duty in their gross negligence claim by "kicking Plaintiffs off the flight for no reason." *Id.* at ¶ 112. Similarly, Plaintiffs' civil conspiracy claim rests upon Plaintiffs' allegation that "Defendants repeatedly consulted with other staff members, managers, and others, and continued their tortious actions against Plaintiffs while **ejecting** Plaintiffs from the plane and calling the airport police." *Id.* at ¶ 125, (emphasis added).

Plaintiffs' claims for false imprisonment and negligent hiring, supervision, training, and/or retention are similarly related to Delta's conduct in removing Plaintiffs from Flight 1249. The basis for Plaintiffs' negligent hiring, supervision, training, and/or retention claim arises from the alleged failure to "properly"

resolve Jane Doe's placement of her cello in the seat behind Plaintiffs. *See Id.* at ¶ 119 ("Defendants failed to properly train and/or supervise the pilots and other personnel responsible for the operation of Flight 1249 with regard to safety procedures for dealing with an incident where a passenger (Defendant Jane Doe) can bring a cello on to a flight and refuse to move the cello and cause severe disruption to legitimate passengers who are then booted from an important flight")]. *Beyond* the fact that this claim *also* necessarily relates to Delta's provision of airline services, any damages stemming from Plaintiffs' claim would derive from their removal from Flight 1249 – the basis for Plaintiffs' other claims. Plaintiffs' false imprisonment claim suffers the same fate, as conduct giving rise to Plaintiffs' false imprisonment claim emanates from their removal from the airplane.

An airline's decision to remove a passenger from their airplane, particularly where the passenger is in a dispute with another passenger, is a key component of the airline's services. Particularly, as is the case here, when the decision to remove the passenger is based upon the comfort or safety of other passengers or Delta employees. Courts in various jurisdictions have held that common law tort claims for alleged wrongful removal from aircraft are expressly preempted by the ADA. *See Mennella v. Am. Airlines, Inc.*, 17-21915-CIV, 2019 WL 1429636, at *7 (S.D. Fla. Mar. 29, 2019), *aff'd*, 824 Fed. Appx. 696 (11th Cir. 2020) (Finding that Plaintiff's negligence claims for improper removal and other state law claims were preempted by the ADA); *Syed v. Frontier Airlines, Inc.*, 522 F. Supp. 3d 503, 510 (E.D. Mo. 2021) (Finding negligence claims preempted by ADA because "[i]f

- 8 -

boarding and boarding procedures (i.e., getting people on the airplane) are services then deplaning or the disembarking procedures (i.e., getting people off the airplane) surely are services as well"); *O'Carroll v. Am. Airlines, Inc.*, 863 F.2d 11, 13 (5th Cir. 1989) (Holding that tort claims for wrongful removal from flight was preempted; *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 400 (S.D.N.Y. 2004) (Finding that "all of Plaintiff's state tort claims, except her defamation claim, are preempted" by the ADA, where the plaintiff's claims were predicated on her removal from her flight).

Courts have also found that resolving seating disputes fits within the broad definition of service. *See, e.g., Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 364 (S.D.N.Y. 2008) (noting claims related to flight attendant's efforts to locate appropriate seat assignments and resolve seat conflicts "are clearly airline services"), *aff'd*, 337 F. App'x 7 (2d Cir. 2009); *Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 250 (S.D.N.Y. 1997) (same). Further, claims premised on the rudeness or lack of good treatment by the staff of an airline are also preempted by the ADA, as they relate to the "service" airlines provide. *See Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 n.2 (11th Cir. 2005) ("[P]assenger handling and courteousness relate to the heart of services that an airline provides. These services are inherent when you board an airplane. The basis of [this] claim was personal rudeness, wonton interference and lack of good treatment. If a passenger is unhappy with … the way he or she [is] treated, such individual is free never to fly that airline again."); *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 406

(S.D.N.Y. 2015) ("in cases where the underlying allegations or facts reveal that the defendants were only carrying out their services, even if in a 'rude, indifferent, and uncaring' manner, courts have found that those claims are still related to the airline services."), *aff'd*, 649 F. App'x 5 (2d Cir. 2016); *Adamore v. Sw. Airlines Corp.*, Civ. A. No. H-11-0564, 2011 WL 6301398, at *5 (S.D. Tex. Dec. 15, 2011) (concluding ADA preempted state tort claims stemming from an agent's "rude, demanding, and crass conduct" while agent acted "very hostile," "uncompassionate," threatened plaintiff with a higher fare, and asked plaintiff to leave the premises).

If tort claims brought by plaintiffs who were removed from airplanes were *not* preempted by the ADA, airlines would be forced to comply with a patchwork of different state common laws regarding their decision to remove passengers from their airplanes. Instead of one commonly understood federal standard (i.e., 49 U.S.C. § 44902(b)) underlying claims for improper removal from airplanes, defendant airlines would be subject to the varying state common law tort rules. Accordingly, Counts III, IV, VI, VII, VIII, and IX of Plaintiffs' Complaint should be dismissed as preempted by the ADA.

### b. Plaintiffs' New York Law Against Discrimination Claim Is Preempted by the ADA

In addition to Plaintiffs' common law tort claims, Plaintiffs also assert a cause of action for a violation of the New York Law against Discrimination.[1] Like

---

[1] As discussed in greater detail in Section III of Delta's Motion to Dismiss, Plaintiffs did not specifically allege *who* violated this law. For purposes of this Motion, Delta assumes that Plaintiffs are alleging that Delta violated the "New York Law Against Discrimination," but does not waive its argument that Plaintiffs Complaint should be dismissed as an impermissible shotgun pleading.

- 10 -

Plaintiffs' tort claims, their cause of action here is based on the removal of "Plaintiff[s] from Delta Airlines Flight 1249 on March 31, 2024." [ECF No. 1 at ¶ 92]. As stated previously, an airline's decision to remove a passenger from an airplane is related to the services provided by the airline. *See supra* Section I, a. Delta does not assert that all claims under the New York Civil Rights Law are preempted by the ADA, but when those claims "relate" to the services the airline provides, the ADA preempts state statutory laws, like the New York Civil Rights Law. *See e.g., Abadi v. Am. Airlines, Inc.*, 23-CV-4033 (LJL), 2024 WL 1346437, at *38 (S.D.N.Y. Mar. 29, 2024) (Holding that the plaintiff's claims under the New York City Human Rights Law were preempted by the ADA as holding otherwise would allow inconsistent obligations across different states). Thus, Count II of Plaintiffs' Complaint should be dismissed as preempted by the ADA.

## II. Counts III, IV, V, VI, VIII, and IX Fail to State a Claim Upon Which Relief Can be Granted

### a. Plaintiffs' Negligent and Intentional Infliction of Emotional Distress Claims (Count III and IV) Should be Dismissed As the Conduct Alleged is Not "Extreme and Outrageous"

Under New York Law[2], a claim for negligent infliction of emotional distress has four elements: "(1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for

---

Further, Delta notes that there is no law titled the "New York Law Against Discrimination." For purposes of this Motion, Delta assumes that Plaintiffs are asserting a claim under the New York Civil Rights Law.

[2] Given the events underlying this action occurred in New York, Delta assumes that New York law will apply to the state law causes of action.

his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 77 (S.D.N.Y. 2016). Similarly, a claim for intentional infliction of emotional distress requires "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Zheng v. Centers Urgent Care Mgmt.*, LLC, 228 A.D.3d 548, 549, 214 N.Y.S.3d 24, 26 (2024). Notably, both causes of actions require "extreme and outrageous conduct."

"[T]he rigor of the outrageousness standard is well established." *Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 530 (S.D.N.Y.2013). Specifically, the "[c]onduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and recovery is only available "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." *Id*. Here, Plaintiffs allege that Defendants engaged in extreme and outrageous conduct when "a racist supervisor demand[ed] an Asian-American [to] speak Mandarin, [lied] about Plaintiff's conduct, kicking Plaintiffs off the flight, calling the airport police, allowing a cello on the plane, lying or disseminating wrongful information about the FAA, [and] allowing Defendant Jane Doe to harass Plaintiffs."

That conduct, even taken as true and in the best light possible for Plaintiffs, does not rise to the level of the extreme and outrageous conduct required under

New York law. "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury.'" *Colo. Capital Invs., Inc. v. Owens*, 304 Fed.Appx. 906, 908 (2d Cir.2008) (summary order) (quoting *Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153, 777 N.Y.S.2d 416, 809 N.E.2d 645 (2004). Accordingly, courts in New York have dismissed claims even where a flight attendant's alleged verbal abuse and physical intimidation to a passenger on a plane "may have been rude and exasperating" but was not "sufficiently atrocious as to permit recovery" for intentional infliction of emotional distress. *Norman v. Trans World Airlines, Inc.*, 98 CIV. 7419 (BSJ), 2000 WL 1480367 (S.D.N.Y. Oct. 6, 2000). As such, Counts III and IV of Plaintiffs' Complaint for negligent and intentional infliction of emotional distress should be dismissed for failure to state a claim upon which relief can be granted.

### b. Plaintiffs' Breach of Contract Claim (Count V) Should be Dismissed as Plaintiffs Did not Allege the Existence of a Contract

"To sustain a claim for breach of contract, New York law requires the following three elements: (1) the existence of a contract; (2) breach; and (3) damages resulting from, or caused by, that breach." *Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 264 (S.D.N.Y. 2022). While federal courts in Florida do not *require* plaintiffs to attach a copy of the contract they allege was breached, New York law does require plaintiffs to allege the existence of a contract.

- 13 -

Here, Plaintiffs fail to allege the existence of any contract. Plaintiffs state they bought a ticket on March 28, 2024, but do not describe the terms of the contract, the existence of the contract, or what specific provision of the contract any party tot his lawsuit allegedly breached.³ Instead, Plaintiffs conclude, without alleging the existence of any such contract, that "Defendants and Delta Airlines did something that the contract specifically prohibited Defendants from doing, that is kicking an Asian-American, and a Christian couple off the flight." [ECF No. 1 ¶ 108]. Accordingly, Count V of Plaintiffs' Complaint for breach of contract should be dismissed for failure to state a claim upon which relief can be granted.

### c. Plaintiffs' Gross Negligence Claim (Count VI) Should be Dismissed As the Conduct Alleged in the Complaint is not "Grossly" Negligent

Under New York law, to state a claim for gross negligence, a plaintiff must allege the following elements: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; (3) injury to the plaintiff as a result of the breach; and (4) conduct by defendant that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing. *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367-68 (S.D.N.Y. 2008), aff'd, 337 Fed.Appx. 7 (2d Cir. 2009). As an initial matter, Plaintiffs pled the elements of *standard* negligence instead of *gross* negligence. *See* [ECF No. 1 ¶¶ 111-115]. Regardless, even incorporating Plaintiffs' allegations elsewhere in the Complaint, Plaintiffs did not sufficiently allege

---

³ Plaintiffs purported to attach a copy of Plaintiffs' confirmation from Delta for the ticket as Exhibit A, but no such exhibit was attached to the Complaint.

conduct on behalf of Delta that contained a "reckless disregard for the rights of others or smacks of intentional wrongdoing." Accordingly, Count VI of Plaintiffs' Complaint for gross negligence should be dismissed for failure to state a claim upon which relief can be granted. *See Norman v. Trans World Airlines, Inc.*, 98 CIV. 7419 (BSJ), 2000 WL 1480367, at *4 (S.D.N.Y. Oct. 6, 2000) (Dismissing gross negligence claim when plaintiff was removed from plane after dispute with flight attendant, as it did not rise to the level of gross negligence).

### d. Plaintiffs' Civil Conspiracy Claim (Count VIII) Should be Dismissed As Plaintiffs Did Not Specifically Allege a Conspiracy Among Defendants

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). However, "[i]f an underlying, actionable tort is established," then a plaintiff "may plead the existence of a conspiracy … to demonstrate that each defendant's conduct was part of a common scheme." *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). "To establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *ACR Sys., Inc. v. Woori Bank*, 14 CIV. 2817 (JFK), 2018 WL 1757019, at *6 (S.D.N.Y. Apr. 10, 2018).

Here, Plaintiffs generally allege that "Defendants repeatedly consulted with other staff members, managers, and others, and continued their tortious actions

against Plaintiffs while ejecting Plaintiffs from the plane and then calling the airport police." [ECF No. 1 at ¶ 125]. Plaintiffs' allegations are not the kind of specific allegations that New York law requires to form a valid civil conspiracy claim. *See e.g., Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy ... are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct"). Accordingly, Count VIII of Plaintiffs' Complaint for civil conspiracy should be dismissed for failure to state a claim upon which relief can be granted.

### e. Plaintiffs' False Imprisonment Claim (Count IX) Should be Dismissed as Plaintiffs Did not Sufficiently Allege that Delta Had The Intent to Confine Plaintiffs

"The common law tort of false arrest is a species of false imprisonment.... Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). With respect to intent to confine, it is well settled in New York that a third party, "by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest." *Du Chateau v. Metro-N. Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (1st Dep't 1999).

Here, Plaintiffs only allegation of detainment states, "Tim and Dr. Susan had to wait until they were met with the airport police outside the gate … Approximately 4-5 police officers came and detained Plaintiffs for more than an hour." [ECF No. 1 at ¶ 65]. First, Plaintiffs fail to allege that they were *actually* detained by Delta. There are no facts alleged in Plaintiffs' Complaint that Delta forced them to wait outside the gate for the police officers to arrive. Second, even if Plaintiffs *had* alleged that Delta forced them to wait outside the gate, Plaintiffs' Complaint makes it clear that Delta's alleged confinement of Plaintiffs was intended to seek police assistance. Thus, Delta could not have had the intent to confine Plaintiffs under New York Law and Count IX of Plaintiffs' Complaint for false imprisonment should be dismissed for failure to state a claim upon which relief could be granted.

### III. Plaintiffs' Complaint is an impermissible shotgun pleading, and dismissal pursuant to Rule 8 and 10(b) is appropriate.

Plaintiffs' Complaint is riddled with the co-mingling of the various defendants and claims stated such that it may be classified as an impermissible shotgun pleading. As currently pled, Delta had to assume various things in order to even prepare this response. As it stands, Delta would have significant trouble preparing an answer to Plaintiffs' Complaint, which severely hinders its ability to build its defense. Accordingly, Delta seeks a dismissal pursuant to Rule 8 and 10(b).

First, Plaintiffs' Complaint is an impermissible shotgun pleading where it fails to distinguish the claims against each of the Defendants. Specifically, in each of the nine (9) counts, Plaintiffs make unspecified allegations against the "Defendants" collectively making it impossible for Delta to be able to identify the conduct alleged against it versus the conduct alleged against the individuals defendants. For example, in paragraph 85 of Plaintiffs' Complaint, which contain the allegations in support of Plaintiffs' Section 1981 claim, they allege that "**Defendant** engaged in intentional discrimination." [ECF No. 1 at ¶ 85], (emphasis added). However, in the very next paragraph, Plaintiffs allege that "**Defendants** caused Plaintiffs to suffer deprivation of their rights to make enforced contracts as enjoyed by citizens of other color." *Id.* at ¶ 86, (emphasis added). While Plaintiffs include a parenthetical indicating which defendant they assert their causes of actions against, several of the counts are missing such an indication (such as Counts I, II, and V). These types of complaints are the quintessential shotgun complaints, which are subject to dismissal. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (stating the plaintiff's 58-page complaint was the quintessential "shotgun" pleading as it named fourteen defendants all charged in each count and replete with allegations that "the defendants" engaged in certain conduct and failing to make any distinction between the fourteen defendants charged).

Further, Plaintiffs adopted the allegations of all preceding counts in each and every count, causing "each successive count to carry all that came before and

- 18 -

the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (Recognizing this type of shotgun complaint is the most common). Not only do Plaintiffs adopt the allegations in the preceding counts, they even adopt the allegations of the *succeeding* counts. *See* [ECF No. 1 at ¶ 130 ("Plaintiffs incorporate all preceding and succeeding paragraphs as though fully set forth herein")]. This is the exact kind of shotgun complaint that violates federal pleading standards and should be dismissed. *See e.g., Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n. 39 (11th Cir.2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading...."); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir.2014), 748 F.3d at 1126 (stating that a shotgun pleading occurs where each count adopts the allegations of all preceding counts).

This Complaint violates the pleadings standards of Rule 8 and 10(b) and dismissal is proper. Plaintiff's claims stated in Counts I though IX should be dismissed pursuant to Rule 12(b)(6).

## **CONCLUSION**

Defendant, Delta Airlines Inc., respectfully requests that this Honorable Court grant its Motion and Dismiss Plaintiffs' Complaint, as preempted under the ADA, for failure to state a claim upon which relief can be granted, and as an impermissible shotgun pleading.

**Good-Faith Conferral Certification**

Pursuant to local rule 3.01(g), the undersigned counsel certifies he attempted to confer with Plaintiffs, via telephone call and electronic correspondence in an effort to resolve the issues sought by the present Motion. Undersigned counsel was advised Plaintiffs did not agree with the relief sought herein.

Respectfully submitted,

_/s/ Christopher J. Jahr_
Christopher J. Jahr, Esquire
Florida Bar No. 73066
Robert E. Paradela, Jr., Esquire
Florida Bar No. 1035485
**WICKER SMITH O'HARA McCOY & FORD, P.A**.
515 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
Telephone:  (954) 847-4800
*Attorneys for Delta Airlines, Inc.*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing document is being served this 30th day of October, 2024, on all counsel or parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing. A copy of the foregoing document was also sent to Plaintiffs via email at lawfirmofconsumerjustice@activist.com

*/s/ Christopher J. Jahr*
Christopher J. Jahr, Esquire