IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:24-cv-01645-CEM-DCI

TIMOTHY ALLEN CHEY and DR.
SUSAN DIZON-CHEY,

      Plaintiffs,

v.

DELTA AIR LINES, INC., FERGIE
FERGUSON, LAVELLE LOURY, JANE
DOE (fictitious name),

      Defendants.

_____/

**DELTA'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

Defendant, DELTA AIR LINES, INC., ("Delta") by and through undersigned

counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(6), hereby files this

Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 31][1], as Plaintiffs'

claims are expressly preempted by the Airline Deregulation Act, found at 49 U.S.C.

§ 41713(b)(1) (2012) (hereinafter "ADA") and fail to state a claim upon which relief

can be granted.

---

[1] For purposes of this Motion, Delta assumes that the corrected Amended Complaint filed as an exhibit in Plaintiffs' Notice of Errata Regarding Amended Complaint is the operative complaint that will be used in this Action.

## INTRODUCTION

This case arises from Plaintiffs' alleged improper removal from a Delta Air Lines, Inc. flight on March 31, 2024, at LaGuardia Airport ("LGA") in New York City, New York. *See ECF No. 31 generally.* Plaintiffs have alleged ten (10) causes of action against Defendants, including violations of Section 1981 and the Federal Civil Rights Act, fraud and deceit, negligent and intentional infliction of emotional distress, breach of contract, standard negligence, negligent hiring, supervision, training, and/or retention, civil conspiracy, and false imprisonment. *Id.*

First, with the exception of Plaintiffs' breach of contract, Section 1981, and Federal Civil Rights Act claim, all of Plaintiffs' claims are preempted by the ADA. The ADA and subsequent Supreme Court precedent is clear - state law claims against airlines that relate to the "services" provided by the airline are preempted. All of Plaintiffs' causes of action stem from their removal from Delta's aircraft on March 31, 2024, after they got into a dispute with another passenger. Delta's decision to remove the Plaintiffs relates directly to the "services" that Delta provides, namely the method and manner in which Delta maintains passenger and flight safety on its aircraft.

Secondly, Plaintiffs fail to state a claim upon which relief can be granted in several of their causes of action based on New York law.

## LEGAL STANDARD

### a. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When a court evaluates a motion to dismiss pursuant to Rule 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff, with factual allegations taken as true. *See*, *e.g.*, *Yuken Corp. v. Gedcore LLC*, No. 22-20661-CIV-ALTONAGA/Torres, 2022 WL 3701233, at *2 (S.D. Fla. June 21, 2022) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A complaint must contain sufficient factual allegations to provide notice of the claims asserted and the ground upon which the claims rest. *Bell Atlanta Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Therefore, a complaint should be dismissed if it fails to contain sufficient factual allegations, which if accepted to be true, would state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a complaint fails to plead sufficient facts to allow the court to draw inferences more than the mere possibility of misconduct, the complaint has failed to show that the plaintiff is entitled to relief and must then be dismiss. *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

## I. Counts III – V and VII - X of Plaintiffs' Complaint Are Preempted by the ADA

The ADA was enacted in 1978 to encourage competition among airlines through deregulation. To prevent airlines from needing to comply with inconsistent state laws regulating their services, the ADA contains an express preemption provision. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992) ("[t]o ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a preemption provision"). The provision states: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (2012). Accordingly, laws that "relate to" an airline's "price, route, or service" are expressly preempted under the ADA.

The Supreme Court has defined "related to" under the ADA broadly, using the same standard for interpretation as ERISA. *Morales*, 504 U.S. at 383–84, 112 S.Ct. at 2037 ("Since the relevant language of the ADA is identical [to ERISA], we think it appropriate to adopt the same standard here...."). The Eleventh Circuit adopted the Fifth Circuit's broad interpretation of "service" under the ADA in *Branche v. Airtran Airways, Inc.*:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another.... Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision

of food and drink, and baggage handling, in addition to the **transportation itself**. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

342 F.3d 1248, 1256–57 (11th Cir.2003) (emphasis added) (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc)).

Plaintiffs assert several common law tort causes of action in their Amended Complaint. In particular, Plaintiffs allege that Delta (1) negligently inflicted emotional distress on them; (2) intentionally inflicted emotional distress on them; (3) committed negligence; (4) negligently hired, supervised, trained, and/or retained the Delta pilots and other personnel responsible for the operation of Flight 1249; (5) civilly conspired to commit torts upon Plaintiffs; (6) falsely imprisoned Plaintiffs; and (7) committed fraud and deceit. *See* generally [ECF No. 31]. In *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014), the Supreme Court held that "state common-law rules fall comfortably within the language of the ADA pre-emption provision." The Supreme Court highlighted that "what is important, therefore, is the effect of a state law, regulation, or provision, not its form, and the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can by state statute or regulation." *Id.* at 283. Thus, the standard for determining whether a common law claim is preempted by the ADA is whether the claim "has a connection with, or reference to, airline prices, routes, or services." *Id.* at 284.

Here, all of Plaintiffs' claims stem from their removal from Delta flight 1249. For example, their negligent and intentional infliction of emotional distress claim is predicated on the "kicking [out of] two 50-something year olds off a flight in front of hundreds of passengers." [ECF No. 31 at ¶ 115]. Further, Plaintiffs claim that Delta breached its duty in their negligence claim by "kicking Plaintiffs off the flight for no reason." *Id.* at ¶ 137. Similarly, Plaintiffs' civil conspiracy claim rests upon Plaintiffs' allegation that "Defendants repeatedly consulted with other staff members, managers, and others, and continued their tortious actions against Plaintiffs while **ejecting** Plaintiffs from the plane and calling the airport police." *Id.* at ¶ 165, (emphasis added).

Plaintiffs' claims for false imprisonment and negligent hiring, supervision, training, and/or retention are similarly related to Delta's conduct in removing Plaintiffs from Flight 1249. The basis for Plaintiffs' negligent hiring, supervision, training, and/or retention claim arises from the alleged failure to "properly" resolve Jane Doe's placement of her cello in the seat behind Plaintiffs. *See Id.* at ¶ 158 ("Defendants failed to properly train and/or supervise the pilots and other personnel responsible for the operation of Flight 1249 with regard to safety procedures for dealing with an incident where a passenger (Defendant Jane Doe) can bring a cello on to a flight and refuse to move the cello and cause severe disruption to legitimate passengers who are then booted from an important flight")]. *Beyond* the fact that this

claim *also* necessarily relates to Delta's provision of airline services, any damages stemming from Plaintiffs' claim would derive from their removal from Flight 1249 – the basis for Plaintiffs' other claims. Plaintiffs' false imprisonment claim suffers the same fate, as conduct giving rise to Plaintiffs' false imprisonment claim emanates from their removal from the airplane.

An airline's decision to remove a passenger from their airplane, particularly where the passenger is in a dispute with another passenger, is a key component of the airline's services. This is especially true when the decision to remove the passenger is based upon the comfort or safety of other passengers or Delta employees. Courts in various jurisdictions have held that common law tort claims for alleged wrongful removal from aircraft are expressly preempted by the ADA. *See Mennella v. Am. Airlines, Inc.*, 17-21915-CIV, 2019 WL 1429636, at *7 (S.D. Fla. Mar. 29, 2019), *aff'd*, 824 Fed. Appx. 696 (11th Cir. 2020) (Finding that plaintiff's negligence claims for improper removal and other state law claims were preempted by the ADA); *Syed v. Frontier Airlines, Inc.*, 522 F. Supp. 3d 503, 510 (E.D. Mo. 2021) (Finding negligence claims preempted by ADA because "[i]f boarding and boarding procedures (i.e., getting people on the airplane) are services then deplaning or the disembarking procedures (i.e., getting people off the airplane) surely are services as well"); *O'Carroll v. Am. Airlines, Inc.,* 863 F.2d 11, 13 (5th Cir. 1989) (Holding that tort claims for wrongful removal from flight was

preempted); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 400 (S.D.N.Y. 2004) (Finding that "all of Plaintiff's state tort claims, except her defamation claim, are preempted" by the ADA, where the plaintiff's claims were predicated on her removal from her flight).

Courts have also found that resolving seating disputes fits within the broad definition of service. *See, e.g., Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 364 (S.D.N.Y. 2008) (noting claims related to flight attendant's efforts to locate appropriate seat assignments and resolve seat conflicts "are clearly airline services"), *aff'd*, 337 F. App'x 7 (2d Cir. 2009); *Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 250 (S.D.N.Y. 1997) (same). Further, claims premised on the rudeness or lack of good treatment by the staff of an airline are also preempted by the ADA, as they relate to the "service" airlines provide. *See Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 n.2 (11th Cir. 2005) ("[P]assenger handling and courteousness relate to the heart of services that an airline provides. These services are inherent when you board an airplane. The basis of [this] claim was personal rudeness, wonton interference and lack of good treatment. If a passenger is unhappy with ... the way he or she [is] treated, such individual is free never to fly that airline again."); *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 406 (S.D.N.Y. 2015) ("in cases where the underlying allegations or facts reveal that the defendants were only carrying out their services, even if in a 'rude, indifferent, and uncaring' manner,

courts have found that those claims are still related to the airline services."), *aff'd*, 649 F. App'x 5 (2d Cir. 2016); *Adamore v. Sw. Airlines Corp.*, Civ. A. No. H-11-0564, 2011 WL 6301398, at *5 (S.D. Tex. Dec. 15, 2011) (concluding ADA preempted state tort claims stemming from an agent's "rude, demanding, and crass conduct" while agent acted "very hostile," "uncompassionate," threatened plaintiff with a higher fare, and asked plaintiff to leave the premises).

If tort claims brought by plaintiffs who were removed from airplanes were *not* preempted by the ADA, airlines would be forced to comply with a patchwork of different state common laws regarding their decision to remove passengers from their airplanes. Instead of one commonly understood federal standard (i.e., 49 U.S.C. § 44902(b)) underlying claims for improper removal from airplanes, defendant airlines would be subject to the varying state common law tort rules. Accordingly, Counts III, IV, V, VII, VIII, IX, and X of Plaintiffs' Complaint should be dismissed as preempted by the ADA.

## II. Counts I, III, IV, V, VI, VIII, and IX Fail to State a Claim Upon Which Relief Can be Granted

### a. Plaintiffs' Claim for Violation of the Federal Civil Rights Act (Count I) Should be Dismissed As an Aircraft is Not a Place of Public Accommodation

In Plaintiffs' Amended Complaint, Plaintiff asserts a cause of action for Defendants violation of the Federal Civil Rights Act. It is unclear which specific

section of the Federal Civil Rights Act Plaintiffs allege Defendants violated. For example, Plaintiffs state that Defendants violated the Federal Civil Rights Act under "42 U.S.C. 1981." [ECF No. 31, ¶ 82]. A couple of paragraphs later, Plaintiffs state that "Defendants, collectively and individually, unequivocally violated The Federal Civil Rights Act which mandates 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, without discrimination or segregation on the grounds of race, color, religion, or national origin.'" [*Id*. at ¶ 84]. That quote is taken from 42 U.S.C. § 200a (a), otherwise known as Title II of the Civil Rights Act ("Title II"). Plaintiffs' Amended Complaint goes on to seemingly argue that Defendants violated Title II, so for the purposes of this Motion, Delta assumes that Plaintiffs are alleging that it violated Title II of the Civil Rights Act.

As noted previously, Title II prohibits discrimination against individuals in places of **public accommodation**. The statute explicitly states which establishments are places of public accommodation under the statute:

> 1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence; (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station; (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

- 10 -

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment and (B) which holds itself out as serving patrons of any such covered establishment.

42 U.S.C. § 200a (b). Notably absent from this list is any mention of aircraft. Courts around the country have uniformly held that airplanes are **not** places of public accommodation. *See e.g., Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 139 (D.D.C. 2005) ("[a]mong the four categories of places of public accommodation provided by Title II—places of lodging, places of eating, places of entertainment, and establishments located within or surrounding these other three types of premises—none even remotely resembles an airline, or indeed any other vehicle or mode of transportation"); *Huggar v. Nw. Airlines, Inc.*, No. 98 C 594, 1999 WL 59841, at *3 (N.D. Ill. Jan. 27, 1999) ("this court must dismiss Count Three of plaintiff's complaint because Title II of the Civil Rights Act of 1964 does not govern aircraft"); *James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 305 (E.D.N.Y. 2017) ("an aircraft is not a "place of public accommodation" within the meaning of the statute").

Accordingly, Delta Airlines Flight 1239 was not a place of public accommodation under the meaning of Title II. Count I of Plaintiffs' Amended Complaint should therefore be dismissed.

### b. Plaintiffs' Claim for Fraud and Deceit (Count III) Should be Dismissed

Under New York law, there are five elements to a fraud claim: "(1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). Claims of fraud are subject to a heightened pleading requirement. *Aetna Cas. and Surety Co v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005). This requires a party to state with particularity the circumstances constituting the fraud, including (1) specifying statements that the plaintiff contends were fraudulent, (2) identifying the speaker, (3) stating where and when the statements were made, and (4) explaining why the statements were fraudulent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994). "A complaint alleging fraud, moreover, must plead facts that give rise to a strong inference of scienter. *Deutsche Zentral-Genossenchaftsbank AG v. HSBC North America*, 2013 WL 6667601, *5 (S.D.N.Y 2013).

Plaintiffs fail to state a claim for multiple reasons. First, none of the specific allegations made against Delta's employees represent misrepresentations of **fact**. Plaintiffs allege that Defendant Fergie Ferguson misrepresented to Plaintiffs that "the cello could not be moved to the bulkhead; that Defendant Jane Doe could do whatever she wanted with her cello; that she had a legitimate reason to kick Tim and

- 12 -

Susan off the plane." [ECF No. 31 at ¶ 99].[2] Similarly, Plaintiffs allege that

Defendant Lavelle Loury, "falsely misrepresented himself to Tim and Susan that

they would be rebooked within an hour to make another connection." [*Id.* at ¶ 104].

None of the alleged misrepresentations are ones of fact, they are only the subjective

*opinions* or *evaluative judgement* of Delta's employees involved in the incident with

Plaintiffs.

Second, Plaintiffs allege that Mr. Loury and Ms. Ferguson made these

statements so that Plaintiffs could not demand "their rights," ask "help from a higher

level supervisor," file an "action with the police" or escalate "the matter to the Delta

manager of the entire operations." [*Id.* at ¶ 103, 104]. Even assuming Mr. Loury and

Ms. Ferguson intended to induce Plaintiffs to rely on their statements to achieve

those goals, there is no reason Plaintiffs could not have done any of the things they

complain that they were prevented from doing, in spite of the alleged

misrepresentations. Thus, Plaintiffs' reliance on these statements, even assuming the

allegations in Plaintiffs' Amended Complaint are true, was not justified.

---

[2] Plaintiffs also claim that Ms. Ferguson "false misrepresented FAA regulations that were not true to get Tim and Susan off the plane so the plane could take off on time." [ECF No. 31 ¶ 100]. Plaintiffs also allege that Ms. Ferguson "false misrepresented to port authorities and to her supervisors to ban Tim and Susan from flying Delta for that day." This allegation does not meet the heightened pleading standard under New York and federal law for claims of fraud and is therefore not addressed in the body of this Motion.

Accordingly, Plaintiffs' claim for fraud and deceit should be dismissed, for failure

to state a claim upon which relief can be granted.

> ### c. Plaintiffs' Negligent and Intentional Infliction of Emotional Distress Claims (Count IV and V) Should be Dismissed As the Conduct Alleged is Not "Extreme and Outrageous"

Under New York Law[3], a claim for negligent infliction of emotional distress

has four elements: "(1) breach of a duty owed to plaintiff, which breach either

unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his

physical safety; (2) extreme and outrageous conduct; (3) a causal connection

between the conduct and the injury; and (4) severe emotional distress." *Nieblas-Love*

*v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 77 (S.D.N.Y. 2016). Similarly, a

claim for intentional infliction of emotional distress requires "(i) extreme and

outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of

causing, severe emotional distress; (iii) a causal connection between the conduct and

injury; and (iv) severe emotional distress." *Zheng v. Centers Urgent Care Mgmt.*,

LLC, 228 A.D.3d 548, 549, 214 N.Y.S.3d 24, 26 (2024). Notably, both causes of

actions require "extreme and outrageous conduct."

"[T]he rigor of the outrageousness standard is well established." *Lan Sang v.*

*Ming Hai*, 951 F.Supp.2d 504, 530 (S.D.N.Y.2013). Specifically, the "[c]onduct

---

[3] Given the events underlying this action occurred in New York, Delta assumes that New York law will apply to the state law causes of action.

must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and recovery is only available "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." *Id*. Here, Plaintiffs allege that Defendants engaged in extreme and outrageous conduct when "a racist supervisor demand[ed] an Asian-American [to] speak Mandarin, [lied] about Plaintiff's conduct, kicking Plaintiffs off the flight, calling the airport police, allowing a cello on the plane, lying or disseminating wrongful information about the FAA, [and] allowing Defendant Jane Doe to harass Plaintiffs." [ECF No. 31 at ¶ 120].

That conduct, even taken as true and in the best light possible for Plaintiffs, does not rise to the level of the extreme and outrageous conduct required under New York law. "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury.'" *Colo. Capital Invs., Inc. v. Owens*, 304 Fed.Appx. 906, 908 (2d Cir.2008) (summary order) (quoting *Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153, 777 N.Y.S.2d 416, 809 N.E.2d 645 (2004). Accordingly, courts in New York have dismissed claims even where a flight attendant's alleged verbal abuse and physical intimidation to a passenger on a plane "may have been rude and exasperating" but was not "sufficiently atrocious as to permit recovery" for intentional infliction of emotional distress. *Norman v. Trans*

*World Airlines, Inc.*, 98 CIV. 7419 (BSJ), 2000 WL 1480367 (S.D.N.Y. Oct. 6, 2000). As such, Counts III and IV of Plaintiffs' Complaint for negligent and intentional infliction of emotional distress should be dismissed for failure to state a claim upon which relief can be granted.

### d. Plaintiffs' Breach of Contract Claim (Count VI) Should be Dismissed as Plaintiffs Did not Allege the Existence of a Contract

"To sustain a claim for breach of contract, New York law requires the following three elements: (1) the existence of a contract; (2) breach; and (3) damages resulting from, or caused by, that breach." *Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 264 (S.D.N.Y. 2022). While federal courts in Florida do not *require* plaintiffs to attach a copy of the contract they allege was breached, New York law does require plaintiffs to allege the existence of a contract.

Here, Plaintiffs fail to allege the existence of any contract. Plaintiffs state they bought a ticket on March 28, 2024, but do not describe the terms of the contract, the existence of the contract, or what specific provision of the contract any party to this lawsuit allegedly breached. Instead, Plaintiffs conclude, without alleging the existence of any such contract, that "Defendants and Delta Airlines did something that the contract specifically prohibited Defendants from doing, that is kicking an Asian-American, and a Christian couple off the flight." [ECF No. 31 ¶ 130].

Accordingly, Count V of Plaintiffs' Complaint for breach of contract should be dismissed for failure to state a claim upon which relief can be granted.

### e. Plaintiffs' Civil Conspiracy Claim (Count IX) Should be Dismissed As Plaintiffs Did Not Specifically Allege a Conspiracy Among Defendants

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). However, "[i]f an underlying, actionable tort is established," then a plaintiff "may plead the existence of a conspiracy ... to demonstrate that each defendant's conduct was part of a common scheme." *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). "To establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *ACR Sys., Inc. v. Woori Bank*, 14 CIV. 2817 (JFK), 2018 WL 1757019, at *6 (S.D.N.Y. Apr. 10, 2018).

Here, Plaintiffs generally allege that "Defendants Ferguson and Loury repeatedly consulted with other staff members, managers, and others, and continued their tortious actions against Plaintiffs while ejecting Plaintiffs from the plane and then calling the airport police." [ECF No. 31 at ¶ 165]. Plaintiffs' allegations are not the kind of specific allegations that New York law requires to form a valid civil

conspiracy claim. *See e.g., Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy ... are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct"). Accordingly, Count IX of Plaintiffs' Complaint for civil conspiracy should be dismissed for failure to state a claim upon which relief can be granted.

### f. Plaintiffs' False Imprisonment Claim (Count X) Should be Dismissed as Plaintiffs Did not Sufficiently Allege that Delta Had The Intent to Confine Plaintiffs

"The common law tort of false arrest is a species of false imprisonment.... Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). With respect to intent to confine, it is well settled in New York that a third party, "by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest." *Du Chateau v. Metro-N. Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (1st Dep't 1999).

Here, Plaintiffs' only allegation of detainment states, "Tim and Dr. Susan had to wait until they were met with the airport police outside the gate … Approximately 4-5 police officers came and detained Plaintiffs for more than an hour." [ECF No. 31 at ¶ 65]. First, Plaintiffs fail to allege that they were *actually* detained by Delta. There are no facts alleged in Plaintiffs' Complaint that Delta forced them to wait outside the gate for the police officers to arrive. Second, even if Plaintiffs *had* alleged that Delta forced them to wait outside the gate, Plaintiffs' Complaint makes it clear that Delta's alleged confinement of Plaintiffs was intended to seek police assistance. Thus, Delta could not have had the intent to confine Plaintiffs under New York law and Count IX of Plaintiffs' Complaint for false imprisonment should be dismissed for failure to state a claim upon which relief could be granted.

## CONCLUSION

Defendant, Delta Air Lines Inc., respectfully requests that this Honorable Court grant its Motion and Dismiss Counts I, III, IV, V, VI, VII, VIII, IX, and X of Plaintiffs' Complaint, as their claims are either preempted under the ADA or fail to state a claim upon which relief can be granted.

## Good-Faith Conferral Certification

Pursuant to local rule 3.01(g), the undersigned counsel certifies he attempted to confer with Plaintiffs, via telephone call and electronic correspondence in an

effort to resolve the issues sought by the present Motion.  Undersigned counsel was

advised Plaintiffs did not agree with the relief sought herein.


Respectfully submitted,


 */s/ Christopher J. Jahr*
Christopher J. Jahr, Esquire
Florida Bar No. 73066
Robert E. Paradela, Jr., Esquire
Florida Bar No. 1035485
**WICKER SMITH O'HARA
McCOY & FORD, P.A**.
515 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
Telephone:  (954) 847-4800
*Attorneys for Delta Air Lines, Inc.*


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing document is being served this January 3, 2025, on all counsel or parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing. A copy of the foregoing document was also sent to Plaintiffs via email at lawfirmofconsumerjustice@activist.com

*/s/ Christopher J. Jahr*
Christopher J. Jahr, Esquire